UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 10-262 SVW |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [25] |
| LAMBERT GRANDBERRY, | ) ) ) | |
| Defendant. | ) ) | |

**I.   Background**

Defendant Lambert Grandberry's was charged with knowingly possessing with intent to distribute 79.69 grams of a substance containing crack cocaine base. The majority of that substance was found in an apartment at 3418 1/2 South Arlington Avenue ("the Arlington Apartment"), and a smaller amount was found in a car outside that address. He was also charged with possession of a firearm, which was also found in the Arlington Apartment. Defendant filed this Motion to Suppress Evidence ("the Motion"), challenging the legality of the search of the Arlington Apartment.[1] At the time of the search, Defendant

---

[1] The Court notes that the search of the drugs found in the car has not been challenged by Defendant. Defendant conceded, "I think it's a reasonable interpretation that the car was under his control at or

was on parole and, as discussed below, his parole status is a key part of the Court's analysis.

**II.  Summary of Facts**

On September 14, 2010, the Court held an evidentiary hearing in which the Court heard testimony from the officers who arrested Defendant and searched the Arlington Apartment.  At the time of the search, Defendant was a parolee. Pursuant to Cal. Penal Code § 3067, Defendant signed a document upon his release from prison that granted him parolee status.[2] The document contained the following parole conditions: "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." (Opposition Exhibit A).

Sometime in early January 2010, LAPD Detective Patrick Aluotto received information from an anonymous informant with whom he had been working for approximately six months. Based on their previous interactions, Detective Aluotto believed the informant to be reliable. The tip regarded narcotics sales occurring at 2351 W. 31st Street. (Aluotto Decl. ¶ 6). The informant told Aluotto that 2351 W. 31st Street was "Looney's spot." "Looney" was a gang moniker associated with Defendant. (Aluotto Decl. ¶ 7). Based on this information, Aluotto accessed Defendant's criminal history and learned of his prior arrests

---

about that time period." (Ev. Hear. Tr. at 120). As the Government has produced evidence linking the car to Defendant, the drugs found in the car are not suppressed.

[2] Cal. Penal Code § 3067(a) provides, "Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause."

2

1  and convictions, which included narcotics trafficking, and that
2  Defendant was on parole. The officers also knew that Defendant was a
3  member of the Harlem 30's Crips Gang. (Mendoza Decl. ¶ 8). Aluotto,
4  along with LAPD Officers Cesar Orozco and Armando Mendoza, conducted
5  surveillance near the 2351 W. 31st Street address on January 14, 2010.
6  Mendoza observed a female, Marilyn Bagby, purchase what appeared to be
7  crack cocaine from Defendant. (Mendoza Decl. ¶ 10). Shortly thereafter,
8  a traffic stop was performed on Bagby's vehicle, resulting in the
9  recovery of a bag containing crack cocaine, for which Bagby was
10 arrested. (Mendoza Decl. ¶ 11).

11     Thereafter, the officers decided to conduct additional
12 surveillance of Defendant, hoping to discover the identity of his
13 narcotics supplier. They focused their surveillance on the Arlington
14 Apartment because they observed him drive there from 2351 W. 31st
15 Street. (Mendoza Decl. ¶ 12). Defendant was observed at the Arlington
16 Apartment over the next eleven days, although the frequency with which
17 he was observed there in person is unclear. On or about January 20 or
18 21, 2010, Defendant was observed exiting the Arlington Apartment
19 holding a white paper bag and entering the passenger seat of an
20 arriving car. He thereafter exited the car empty-handed and returned to
21 the Arlington Apartment. The driver of that car was later stopped and
22 found in possession of a similar looking white paper bag containing
23 over $9,000 in denominations consistent with sales in narcotics. (Ev.
24 Hear. Tr. at 61). No drugs were found, however, and neither Defendant
25 nor the car's driver were arrested at that time. (Id.). No other
26 transactions involving Defendant were observed. (Id.).

On January 25, 2010, the officers observed Defendant lock the door of the Arlington Apartment, get into a car, and drive away. (Mendoza Decl. ¶ 16). When he returned, Officer Mendoza identified himself as a police officer. (Mendoza Decl. ¶ 17). Defendant began to flee toward the rear of the building, and he threw a set of keys into the neighboring yard. (Mendoza Decl. ¶ 17). The officers quickly apprehended Defendant and used the keys he had thrown to unlock the Arlington Apartment. (Mendoza Decl ¶ 18). Inside, they discovered the drugs and firearm at the heart of this Motion to Suppress.

**III. The Parties' Arguments**

The government maintains that Defendant lacked a legitimate expectation of privacy in the Arlington Apartment and thus cannot challenge a search that occurred there. The argument in support of the government's position relies on <u>Samson v. California</u>, 547 U.S. 843 (2006) and <u>United States v. Lopez</u>, 474 F.3d 1208 (9th Cir. 2007), which held that a parolee cannot contest a warrantless search where under the totality of the circumstances a parolee would not have a reasonable expectation of privacy in the premises searched. Those cases recognize that parole conditions are a part of the analysis, but that other factors are relevant.

Defendant contends that <u>United States v. Howard</u>, 447 F.3d 1257, 1262 (9th Cir. 2006) controls, and that a parolee's expectation of privacy is governed solely by his explicit parole conditions. Defendant further contends that because the parole conditions refer to his residence, he retained an expectation of privacy as an overnight guest in his girlfriend's apartment.

4

**IV. Expectation of Privacy**

    **A.   Relevant Case Law**

In Samson v. California, 547 U.S. 843 (2006), a parolee's person was searched in a warrantless, suspicionless search. In determining whether the search was reasonable under the Fourth Amendment, the Court conducted a "totality of the circumstances" test. Under this test, "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Id. at 848 (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)). In conducting this analysis, the Court considered the applicable parole statute (Cal. Penal Code § 3067) and the parole conditions.

In Samson, the Court found that the parolee had a significantly diminished expectation of privacy simply by virtue of his parolee status. Id. at 850 (citing Knights, 534 U.S. at 119) ("On this [expectation of privacy] continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." In addition, the parolee had signed unambiguous parole conditions permitting suspicionless searches of his person by any peace officer "at any time." Id. at 851. The Court viewed this to be a "salient" factor that "significantly diminished" any expectation of privacy.[3] Id. at 852 (citing and quoting Knights, 534

---

[3] The Samson Court declined to "reach the issue whether 'acceptance of the search condition constituted consent in the Schneckloth [ v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973),] sense of a complete waiver of his Fourth Amendment rights." Id. at 852 n.3 (quoting Knights, 534 U.S. at 118). Rather, the important aspect of the parole condition was that it put the parolee on *notice* of the searches to which he was subject, thus diminishing his

U.S. at 119-20). The Court held: "Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' . . . including the plain terms of the parole search condition, we conclude that petitioner **did not have an expectation of privacy that society would recognize as legitimate**." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 477 (1972)) (emphasis added).

In United States v. Lopez, 474 F.3d 1208, 1212 (9th Cir. 2007), the Ninth Circuit adopted the totality of the circumstances reasoning in Samson for parole searches of residences, holding that the "issue is controlled by the recent United States Supreme Court case Samson v. California." The court held that a parolee had no reasonable expectation of privacy in his own residence. There, officers acted on a tip that the defendant was staying at a particular residence. Id. at 1210. The officers surveilled that residence later that day and observed the defendant through a window, which prompted them to conduct a parole search of the premises. Id. The defendant moved to suppress the search as unlawful under the Fourth Amendment. Id. at 1212. The Ninth Circuit found that the factors that supported the Samson Court's finding that a parolee lacked a reasonable expectation of privacy as to a search of his person supported the finding as to a search of a parolee's residence. Id. at 1213 ("If under the California parole-search statute, a parolee has no expectation of privacy in his person [under Samson], we reason that a parolee has no legitimate expectation of privacy in his residence either, at least when the parolee is present."). As in Samson, the Lopez court also considered

---

expectation of privacy.

6

the parole conditions that the parolee had signed as relevant in the expectation of privacy analysis. Id.

### B. Application

Defendant was on notice that he was subject to searches at all times, which the Supreme Court found to be a salient argument for reducing a parolee's expectation of privacy in Samson. Cal. Penal Code § 3067(a) provides, "Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause."[4] In United States v. Flores, 288 Fed. Appx. 365, 366 (9th Cir. 2008), the parole conditions that the defendant signed did not explicitly state that a search could be conducted without suspicion. Nonetheless, the Ninth Circuit found that "the California statute governing the rights of parolees subjects *all* parolees to suspicionless searches, and it does not suggest that consent or awareness is a necessary requirement. Cal. Penal Code § 3067(a), (b)." Id. (emphasis in original). Both the Samson and Lopez courts relied on the breadth of

---

[4] Courts have upheld warrantless searches, even absent signed consent forms, when probationers and parolees were informed of the limitations on their Fourth Amendment rights either through statutes, regulations or court orders. See e.g. Griffin v. Wisconsin, 483 U.S. 868, 880 (1987); Jones v. State, 282 Ga. 784, 786 (Ga. 2007); United States v. Godsey, 224 Fed. Appx. 896 (11th Cir. 2007); United States v. Freeman, 479 F.3d 743, 748 (10th Cir. 2007); United States v. Midgette, 478 F.3d 616 (4th Cir. 2007); United States v. Giannetta, 909 F.2d 571, 575-76 (1st Cir. 1990); United States v. Schoenrock, 868 F.2d 289, 291-93 (8th Cir. 1989); Commonwealth v. Pickron, 634 A.2d 1093, 1097-98 (Pa. 1993); People v. Flagg, 577 N.E.2d 815, 816-818 (Ill. 1991); United States v. Grimes, 225 F.3d 254, 258-59 (2d Cir. 2000); People v. Hale, 714 N.E.2d 861, 863-64 (NY 1999); State v. Lockwood, 632 A.2d 655, 661 (Vt. 1993).

Cal. Penal Code § 3067 as part of their analyses in concluding that their respective parolees lacked reasonable expectations of privacy.

Defendant's parole conditions also informed Defendant of his greatly reduced expectation of privacy. The parole conditions read: "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer."[5] (Opposition Exhibit A). Defendant contends that these parole conditions do not specifically identify third-party residences as locations subject to warrantless searches. He maintains that a parolee would have a reasonable expectation of privacy as an overnight guest at the Arlington Apartment, where he stored his drugs and firearm.[6] The Samson Court adopted a test that was not grounded in "consent," but rather a totality of the circumstances analysis. Samson, 547 U.S. at 852 n.3. It would be unreasonable for Defendant to believe that his person, his residence, and all his possessions were subject to search but that a safety zone had been carved out for a location to which he was less connected. See United

---

[5] Defendant submitted two publications from the California Department of Corrections and Rehabilitation that he contends show that the "any property under your control" term in his parole conditions does not include a residence other than the defendant's residence. However, he submitted no evidence that he ever viewed or relied on these publications. More significantly, the Court does not base its holding on the application of the "any property under your control" term in the parole conditions.

[6] Non-parolee overnight guests have legitimate expectations of privacy in the places they are visiting under Minnesota v. Olson, 495 U.S. 91, 98 (1990). However, the Supreme Court made clear in Samson that Fourth Amendment rights applicable to non-parolees do not necessarily translate to parolees. Rather, whether parolees retain legitimate expectations of privacy in light of their parolee status must be analyzed under the totality of the circumstances.

States v. Doucette, CR 09-217-GHK (C.D. Cal. Jan. 15, 2010), Docket no. 56 (discussed *infra*).

Furthermore, the Arlington Apartment effectively served as Defendant's temporary residence while he stayed there. When staying overnight, the Arlington Apartment became his temporary home. Indeed, this was the basis for affording standing to overnight guests in Olson, which held "that Olson's warrantless arrest was illegal because he had a sufficient connection with the premises *to be treated like a householder*." Olson, 495 U.S. at 99-100. Since Defendant had no legitimate expectation of privacy in his own household per Lopez, he did not have an expectation of privacy in his temporary household at the Arlington Apartment.

Other courts have examined similar arguments and have found no expectation of privacy under these circumstances. In United States v. Taylor, the Fifth Circuit held that parole conditions explicitly referencing a parolee's residence also covered locations where he stayed as an overnight guest. 482 F.3d 315, 318 (5th Cir. 2007) ("Fourth Amendment rights as a guest are limited to those that he could assert with respect to his own residence."). See also United States v. Venson, 2009 WL 1565736, *7 (W.D. Pa. 2009) (denying a parolee standing in the home of another despite silence on that issue in the parole conditions; "[i]f this court were to recognize that a parolee such as defendant has a reasonable expectation of privacy in the home of a third party, it would grant him greater rights in the third party's home than he would have in his own home"); United States v. Pabon, 603 F. Supp. 2d 406, 417 (N.D.N.Y. 2009) (reaching the same conclusion because based on a defendant's parolee status, "regardless of whether

[the defendant] was living in [a friend]'s apartment, an overnight guest, or merely there temporarily, he did not have an expectation of privacy in [that] apartment that society would recognize as legitimate"); United States v. White, 622 F. Supp. 2d 34, 42 n.5 (S.D.N.Y. 2008); Sean S. Kersten, United States v. Howard: Refocusing Probable Cause for Probationer and Parolees, 37 Golden Gate Univ. L. Rev. 515 (2007).

**V.  Defendant's Reliance on Howard**

Defendant primarily relies on United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006). In that case, the Ninth Circuit suppressed evidence from a warrantless parole search because the police lacked probable cause to believe that the parolee resided at his girlfriend's apartment, where the search occurred. The court observed that the parolee had not expressly consented in his parole conditions to a warrantless search of a third party residence. Judge Noonan expressed serious concerns regarding the practical implications of the majority opinion in his *dubitante* concurrence, noting that the Howard majority did not conduct any analysis of the parolee's expectation of privacy with regard to the search. He highlighted the strange result that a parolee would now have more rights in somebody else's residence than his own.[7]

Both Samson and Lopez, which were decided after Howard, addressed the very issue that was of concern to Judge Noonan. While the Ninth

---

[7] Pursuant to Howard, the Court conducted an evidentiary hearing on September 14, 2010 and concluded that the officers here lacked probable cause to believe that Defendant resided at the Arlington Apartment.

10

Circuit has cited Howard subsequent to Samson and Lopez, in each case the court easily found that there was probable cause that the parolee resided at the residence searched, and no further analysis was required.[8] See United States v. Mayer, 560 F.3d 948, 957-58 (9th Cir. 2009) (probable cause found that parolee lived at the residence searched, which was his former official residence); United States. v. Whitfield, 311 Fed. Appx. 14, 15 (9th Cir. 2009) (probable cause found that parolee lived at the residence searched where it was "his official probation address"); United States v. Franklin, 603 F.3d 652 (9th Cir. 2010) (probable cause found that motel was parolee's residence based in part on a credible tip that he was living there); United States v. Flores, 288 Fed. Appx. 365, 366 (9th Cir. 2008) (probable cause found that parolee lived at his former residence despite the fact that he had "legally 'absconded'" from that residence); United States v. Norris, 325 Fed. Appx. 522, 524 (9th Cir. 2009) (probable cause existed when parolee told officers he lived at the residence searched).[9]

In United States v. Doucette, CR 09-217-GHK (C.D. Cal. Jan. 15, 2010), Docket no. 56, the court did analyze the interplay between Howard, Samson, and Lopez. In that case, police officials had conducted a parole search of a defendant at somebody else's residence. The police found a digital scale, marijuana plants, a handgun, and more than 650 rounds of ammunition. While the evidence in that case was not as clear as to the defendant's overnight guest status, he nevertheless claimed to have standing to challenge the search pursuant to Olson. The court

---

[8] The Lopez court did not even mention Howard.

[9] Similarly, in United States v. Grant, – F.Supp.2d –, 2010 WL 3515762, at *10 (N.D. Cal. Sep. 8, 2010), the court declined to address the expectation of privacy issue under Samson and Lopez.

11

declined to follow <u>Howard</u> and held that "*Howard*'s apparent justification for extending *Motley* to a parolee-defendant seeking to suppress the fruits of a parole search does not withstand *Samson*." <u>Id.</u> at 3. The court thus denied the parolee defendant's motion to suppress the evidence, reasoning,

> Given that the Fourth Amendment protects people, not places, and a parolee has no reasonable expectation of privacy in either his person or his residence, it follows that a parolee similarly does not have an expectation of privacy in a third party residence that society would recognize as legitimate. We find this conclusion compelled by both precedent and logic, for "[a]ny other rule would diminish the protection to society given by the search condition of parole, permitting search at any time." *Lopez*, 474 F.3d at 1213. The result is also one of sound policy; "[t]hat the Fourth Amendment should not offer special sanctuary to felons serving part of their sentence is an outcome not to be regretted." *Howard*, 447 F.3d at 1269 (Noonan, J., concurring). Without a reasonable expectation of privacy in the home of a third party, Defendant lacks standing to challenge a search of the residence.

<u>Id.</u> at 3-4.

**VI. Conclusion**

For the reasons state above, the Motion to Suppress is DENIED on the ground that, as a parolee, Defendant did not have a reasonable expectation of privacy under the totality of circumstances.

IT IS SO ORDERED.

DATED: <u>January 26, 2011</u>

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

12